IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PAT HOLLAND, as Administratrix, etc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:05-cv-325-TMP |
| ) | |
| ) | |
| WALTER KIDDE PORTABLE ) | |
| EQUIPMENT, INC.; MAPLE CHASE ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION ON
MOTION FOR PARTIAL SUMMARY JUDGMENT

This cause is before the court on the motion for partial summary judgment filed by defendants Maple Chase Company ("MCC") and Walter Kidde Portable Equipment, Inc. ("Kidde"), on January 30, 2007 (Doc. 128). The motion has been fully briefed, and the parties have consented to the exercise of dispositive jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 71).

Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings.  Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

Undisputed Facts for Purposes of Summary Judgment

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, taken in a light most favorable to the non-moving party. In 1994, MCC manufactured an ionization chamber smoke detector under the model number KSA-700. It was sold and marketed through Kidde. The known state-of-the-art in the smoke-detector industry at the time was that ionization smoke detectors work best in detecting fast flaming fires, but work more slowly in detecting slow smoldering fires. It was known that slow smoldering fires are detected more quickly by photoelectric smoke detectors. Although the front of the box in which the KSA-700 was distributed promised "complete smoke and fire response," the owner's manual inside the box contained the following statement:

> ALL TYPES OF SMOKE ALARMS HAVE LIMITATIONS. NO TYPE OF SMOKE ALARM CAN SENSE EVERY KIND OF FIRE AND SMOKE EVERY TIME. Ionization Smoke Alarms (such as this unit) are your best overall choice for reliability and fast response time (NFP Research Foundation and U.S. Fire Administration Data) since they quickly sense small "invisible" smoke particles and also sense large "visible" smoke particles; Note photoelectric smoke alarms may respond faster in certain types of fires, for example slow smoldering fires with large "visible" smoke particles.

In 2000, plaintiff Pat Holland received a KSA-700 smoke detector from her employer as a gift. At the time, she already had three or four other smoke alarms installed in her home, and she was not shopping for or in the market for another smoke alarm. When she received the gift KSA-700, she did not read the outside of the box, nor did she read the owner's manual in the box. There is no evidence that her daughter, the deceased, Erica DeRamus Early, read either the box or owner's manual at any time after Pat Holland received the smoke alarm as a gift.

During the middle of the night on April 9, 2004, a fire occurred at Pat Holland's home, where the decedent, Erica Early, was asleep and the KSA-700 smoke alarm was installed. Erica Early was asleep in an upstairs bedroom, and the KSA-700 was installed in the hallway just outside the bedroom. The fire originated in a chair in the downstairs living room, probably as the result of a cigarette or other smoking material being dropped accidentally into the cotton fabric and batting of the chair. It was a slow, smoldering fire that smoked for a period of time before it erupted into open flames. When firefighters arrived at the home, all of the smoke alarms, including the subject KSA-700, were sounding alarms. Although the fire was quickly extinguished and did little damage to the house, Erica Early and two other occupants of the home were found dead in the bedroom, overcome by smoke inhalation.

Discussion

The motion for partial summary judgment seeks dismissal only with respect to Counts Three and Four of the plaintiff's amended complaint filed on January 16, 2007. Count Three of the amended complaint, sub-titled ""Negligent Failure to Warn," alleges that the defendants —

> [N]egligently failed to warn members of the general public, including the plaintiff's decedent, of the ineffective and inefficient performance of the said ionization smoke detector located at the premises on the occasion made the basis of this suit. The said defendants negligently failed to warn members of the general public, including plaintiff's decedent[,] that said smoke detectors would only detect certain types of residential fires and would not detect slow smoldering fires known to commonly occur in residences and which did occur on the occasion made the basis of this suit.
>
> Plaintiff further avers that defendant concealed the known dangers associated with said smoke detector, and negligently failed to recall said smoke detectors, or alternatively, to warn consumers of dangers precipitated by using smoke detectors that contain only ionization detection mechanisms or devices.

From these allegations, the court understands the plaintiff to be advancing the following three grounds for relief:

(1) Defendants <u>negligently failed to warn the decedent</u>, as a member of the general public, of the risks, limitations, and dangers associated with an ionization-only smoke detector;

(2) Defendants <u>concealed from the decedent</u>, as a member of the general public, the risks, limitations, and dangers associated with an ionization-only smoke detector; and

(3) Defendants <u>negligently failed to recall</u> ionization-only smoke detectors.

Count Four of the amended complaint alleges that the defendants —

> [F]alsely advertised and/or misrepresented to members of the general public that its ionization smoke detectors would promote adequate protection to residential occupants[,] such as plaintiff's decedent[,] in all types of residential fires. Plaintiff further avers that said defendants knew, or should have known, that said ionization smoke detector would not adequately protect residential occupants in the event of slow smoldering fires.

From this averment, the court understands the plaintiff to be asserting that the defendants <u>falsely advertised and represented to the decedent as a member of the general public</u> that ionization smoke detectors "adequately' protect against all types of residential fires, even though they knew that photoelectric smoke alarms detected slow smoldering fires more quickly than ionization detectors.

The court will address each of these theories in turn.

A. Negligent Failure to Warn

Plaintiff complains that defendants negligently failed to warn the decedent, Erica Early, as a "member of the general public," about the alleged risks, limitations, and dangers of ionization-only smoke detectors. Plaintiff recognizes that Erica Early was not the purchaser of the smoke detector at issue in this case, but was a guest in the home of Pat Holland, who received the smoke detector as a gift. There is no evidence that Erica Early had access to or otherwise read either the exterior of the box in which the smoke detector came to Pat Holland in 2000, or the product literature and owner's manual inside the box. There is no evidence concerning warnings printed or stamped on the KSA-700 smoke detector itself, apart from the box and product literature in the box. The KSA-700 smoke detector had been installed in Pat Holland's home for almost four years at the time of the fire that caused Erica Early's death. Plaintiff appears to concede that she, Pat Holland, as the owner of the house and the smoke detector itself was adequately warned that the ionization smoke detector responds more slowly to smoldering fires than does a photoelectric detector. The package insert demonstrates that very warning.

To the extent that the defendants' duty to warn about the limitations and risks associated with using an ionization smoke detector ran only to plaintiff Pat Holland, as the owner of the house in which the detector was installed, there is no question that defendants are entitled to summary judgment. Not only was the warning in the product literature in the package adequate as a matter of law to warn her about the risks, she did not read any warnings concerning the smoke detector. Plaintiff would not have relied upon the warnings if she had read them, as evidenced by the fact that even today, after the fire, she does not know what types of smoke detectors are installed in her home. Thus, if the duty to warn extends *only* to the consumer or ultimate user of the product and that person

7

was Pat Holland, the warning was adequate and defendants are entitled to judgment as a matter of law on that claim.

As framed by the plaintiff, however, the issue is not the adequacy of the warning to her, but the adequacy of the warning to the decedent, Erica Early, "as a member of the general public." For the reasons below, the court finds that the duty to warn did not extend to the decedent simply by virtue of her being a member of the general public, but did extend to her for another reason. First, neither the decedent nor any other member of the general public was the "ultimate user or consumer" of the KSA-700 smoke detector at issue in this case for purposes of the defendants' duty to warn. As the Alabama Supreme Court explained in Abney v. Crosman, 919 So. 2d 289 (Ala. 2005), an injured party may seek relief with respect to a defendant's negligent failure to warn "the user" of a product that results in injury to someone other than "the user." In Abney, a mother bought her seven-year-old son an air rifle, who later used the rifle to shoot a neighbor's child in the eye, killing the child. The neighbor whose child was killed filed suit against the seller and manufacturer of the air rifle, contending that the defendants negligently failed to warn the mother who purchased the gun that it could be lethal to other people. The court wrote:

> Liability for one's negligent failure to warn a user of the dangers of a product arises under Restatement (Second) of Torts § 388 (1965), as adopted by this Court. See Purvis v. PPG Indus., Inc., 502 So. 2d 714, 719 (Ala. 1987). Section 388 provides:
>
>> "One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

> "(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> "(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> "(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."
>
> Section 388 sets forth a supplier's duty to exercise care in placing products in the market. Ex parte Chevron Chem. Co., 720 So. 2d 922, 924 (Ala. 1998). This duty is owed not only to those whom the supplier "should expect to use" the product, but also to those who are "endangered by its probable use." Restatement (Second) of Torts § 388. Although failure-to-warn cases have traditionally been brought against the supplier by a person injured by his or her own use of the product, in this case we are presented with the somewhat novel legal theory — that the plaintiff may be someone other than the user of the product. The language of § 388, however, allows a plaintiff to travel upon such a theory in a negligence action.

Id. at 293-294. Although the supreme court affirmed summary judgment on the ground that the lethality of the gun was "open and obvious," so that no duty to warn existed, the court nevertheless concluded that someone who had not purchased or "used" the product (e.g., the deceased child) could bring suit as plaintiffs with respect to the adequacy of the warning given, not to them, but to "the user" (the mother who purchased the air rifle for her son). The duty was not to warn the deceased child or her parents about the dangers of the gun, but to warn the "consumer or ultimate user" of the gun. It was the failure to warn the mother who purchased the air rifle that was the potential proximate cause of the injury.

A comparable circumstance exists in this case. The "user" or consumer of the KSA-700 smoke detector was the homeowner who installed in her home for the purpose of providing smoke and fire protection, that is, Pat Holland. Her houseguest, Erica Early, was not the "user" or consumer

of the product, although it was she who ultimately was injured by its allegedly defective condition. The question is not whether suit can be brought for Erica's death — Abney makes clear that suit can be brought by the injured party, even if the injured party is not the "user" of the product. Rather, the issue is to whom does the duty to warn run.

Turning again to § 388 of the Restatement (Second) of Torts, it is obvious that mere members of the general public are not either "users" of any particular smoke detector or those likely "to be endangered by its probable use."[1] The "user" of a particular smoke detector is the person who installs it in his or her house to provide smoke and fire detection for both himself and others occupying his home. Persons likely to be "endangered by its probable use" may include those people that enter or occupy the "user's" home. Thus, the duty to warn Erica about the risks and limitations associated with the use of an ionization smoke detector may well have extended to her, not as a mere member of the general public, but as a houseguest in the home of a purchaser or "user" of a KSA-700 smoke detector. MCC and Kidde certainly could foresee that purchasers and "users" of smoke detectors would have guests in their homes, exposing those guests to the same risks inherent in limitations of ionization smoke alarms. Such guests were likely "to be endangered by [the smoke detector's] probable use," so that the duty to warn them of those dangers extended to them as well. See also, Dillard v. Pittway Corp., 719 So. 2d 188 (Ala., 1998) ("We note that the ultimate user or

---

[1] Certainly many, many people use and rely upon smoke detectors, and, thus, it might be said that every member of the general public is one who might "be endangered by its probable use." The question is not whether the general public is endangered by smoke detectors generally, but whether a particular person is likely endangered by a particular detector. The extent, clarity, and thoroughness of a warning vary from product to product, so that it cannot be determined by mere reference to the public at large whether, in all circumstances, the warnings received by a particular person concerning a particular product were adequate or not. The circumstances of each case must dictate that determination.

consumer who seeks recovery in an AEMLD action need not have purchased the product, but could be a family member, friend, employee, *guest*, or donee of the purchaser") (Italics added for emphasis); Ex parte Chevron Chemical Co., 720 So. 2d 922 (Ala., 1998) (holding failure-to-warn claims are essentially the same under negligence and AEMLD).

Whether the warning given to Pat Holland in the package insert is adequate or reasonable warning to her houseguests, including Erica, is a question of fact for the jury. A jury might well conclude that the only reasonable and efficacious way for a smoke detector manufacturer to convey a warning about the risks and limitations of ionization smoke detectors is a detailed package insert delivered to the original consumer or purchaser. See generally Restatement (Second) of Torts § 388, note n. On the other hand, a jury might also conclude that, given the severity of the risk involved, something more must be done, such as a conspicuous warning label on the smoke detector itself.

While the court does not agree with plaintiff that defendants had a duty to warn the "general public," a duty did exist to warn those people likely "to be endangered by [the] probable use" of the smoke detector, including guests in the consumer's or user's home. Whether a detailed package insert delivered to the original consumer is "reasonable" enough to comply with that duty is a jury question. Thus, the defendant's motion for partial summary judgment is due to be denied with respect to plaintiff's claim that they negligently failed to warn the decedent, Erica Early, about the risk and limitations associated with an ionization smoke detector.

### B. Concealment

Defendants also seek summary judgment on plaintiff's theory that they concealed from the decedent, as a member of the general public, the risk and limitations associated with ionization

smoke detectors. Of course, plaintiff does not argue that defendants undertook to conceal these risks from the decedent personally. Rather, the argument is made that defendants have concealed from the general public, which included the decedent, the known risks of slow detection of smoldering fires by ionization smoke alarms. But this claim is defeated by the package insert itself, which plainly states (although not in great detail) that photoelectric smoke detectors more quickly respond to slow smoldering fires. The very defect alleged by plaintiff is clearly described in the package insert, which has been delivered to thousands or tens of thousands of purchasers of the KSA-700 smoke alarm, alerting them to its limitations. This disclosure to purchasers undermines the contention that defendants were trying to hide this limitation, or at least puts consumers on notice of facts, which with due inquiry, would reveal the facts purportedly concealed. As far back as 1994, when this smoke detector was manufactured, the package insert was informing members of the general public that ionization smoke alarms might not respond and alarm to slow smoldering fires as rapidly as photoelectric detectors. There simply is no evidence that the defendants were attempting to hide this fact from the general public. Accordingly, the motion for partial summary judgment will be granted on this claim.

    C.  Negligent Failure to Recall

Plaintiff contends that the defendants were negligent in failing to institute a recall of the KSA-700 and similar ionization smoke detectors. This is not a case where a recall was undertaken, but performed poorly or negligently. The gravamen of this claim is that the defendants' very failure to order a recall was negligent.

The court is persuaded that Alabama law simply does not recognize a claim grounded on a duty to recall products. While negligence and the Alabama Extended Manufacturer's Liability Doctrine both make it actionable for a manufacturer or seller to place a defective and unreasonably dangerous product on the market, neither body of law imposes a duty to *recall* a product. Both theories are grounded on the fault of the manufacturer or seller, and that fault derives from the act of placing a defective product on the market, not on failing to recall a product at a later time. The proper focus of the liability analysis is on the condition of the product at the time it is placed into the stream of commerce, not the condition of the product or the state of the art at a later time.

Although decided on the evidentiary issue of the admissibility of subsequent remedial measures, the case of Alabama Power Co. v. Marine Builders, Inc., 475 So. 2d 168 (Ala., 1985), captures the essence of the duty owed by a manufacturer or seller under either negligence or the AEMLD. There, a co-defendant of the defendant sailboat manufacturer sought to introduce evidence of a warning sticker or label placed on sailboat masts *after* the date the particular sailboat in issue was manufactured and sold. The court denied admission of the evidence, and the Alabama Supreme Court affirmed, saying:

> APCo, however, argues that the absence of the "mast warning" was nevertheless admissible because Bangor Punta [the sailboat manufacturer] had knowledge of the danger of electrical shock from possible contact with lower power lines before this accident took place. In other words, APCo would have this evidence admitted against Bangor Punta, even though Bangor Punta's control over the sailboat had long since ceased, so long as Bangor Punta had knowledge of the danger before the accident. Alabama cases have focused on post-accident remedial changes to premises, facilities, or articles under the defendant's control which proximately causes injury. See Standridge, *supra*; Dixie Electric Co. v. Maggio, 294 Ala. 411, 318 So. 2d 274 (1975). Thus, had Bangor Punta controlled the sailboat in question at the time the "mast warnings" were placed upon 1976 models, perhaps an issue of negligence would have been made by its failure to incorporate that change in the

1975 model. [Footnote omitted]  But, as the Fifth Circuit Court of Appeals has commented on the subject of subsequent remedial measures in a products liability case, Grenada Steel Industries, Inc. v. Alabama Oxygen Co., 695 F.2d 883, 888 (5th Cir. 1983):

>"Instead, we ought to consider the probative value of such evidence on the point at issue. *The real question is whether the product or its design was defective at the time the product was sold.* See S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 181 (3d Ed. 1982). *The jury's attention should be directed to whether the product was reasonably safe at the time it was manufactured....* The introduction of evidence about subsequent changes in the product or its design threatens to confuse the jury by diverting its attention from whether the product was defective at the relevant time to what was done later.... Interpreted to require the evidence to focus on the time when the product was sold, Rule 407 would conform to the policy expressed in Rule 403, the exclusion involving information if its probative value is substantially outweighed by the danger of confusion...." (Emphasis added.)
>
>See also Casrell v. Altec Industries, Inc., 335 So. 2d 128 (Ala. 1976) (to establish liability in a products liability case, plaintiff must show that he suffered injury by one who sold a product in a defective condition); and First National Bank of Mobile v. Cessna Aircraft Co., 365 So. 2d 966 (Ala.1978) (the manufacturer's liability arises because he has placed the product on the market and having done so, if he still retains some measure of control, no sale having taken place, he should be liable).

Alabama Power Co. v. Marine Builders, Inc., 475 So. 2d 168, 172-3 (Ala. 1985). The fault necessary to claim under either negligence or AEMLD arises from the placing of a defective or negligently designed or manufactured product on the market, not the failure of the manufacturer or seller to recall the product once on the market. Subsequent improvements in design and manufacturing techniques do not make a product "defective," if, at the time it was sold or placed in the stream of commerce, it complied with the then-existing state of the art. See Casrell v. Altec Industries, Inc., 335 So. 2d 128, 131 (Ala. 1976).

The court finds that Alabama law does not recognize a tort theory grounded upon a duty to recall a product after it has been placed in the stream of commerce and is beyond the control of the manufacturer or seller.  If the product was defective and unreasonably dangerous at the time it was placed on the market, the remedy is a claim under AEMLD or common-law negligence.  But there is no duty to recall a product, the breach of which supplies a claim in addition to the AEMLD or negligence claim existing at the time the product is sold.  Implying such a duty eviscerates statutory limitation periods for asserting AEMLD and negligence claims by, in effect, placing the manufacturer and seller of a product under a perpetual duty to recall a product at some time in the future.  Regardless of how long a product has been on the market, such a theory would allow consumers to invoke the duty to recall the product years after the product was placed on the market.  Such a radical change in law has not been declared in any Alabama caselaw found by this court or cited by the plaintiff.  Consequently, the defendants' motion for partial summary judgment is due to be granted on this alleged breach of a duty to recall.

D.  False Advertising/Misrepresentation

Plaintiff's final theory under attack by the motion for partial summary judgment alleges that the defendants falsely advertised or misrepresented to the general public, including plaintiff's decedent, that ionization smoke detectors provided adequate residential fire and smoke protection when, in fact, they well knew that ionization smoke detectors did not respond as quickly to slow smoldering fires as photoelectric smoke detectors.  To the extent that this theory is distinct from the failure-to-warn theory discussed above, the court need not offer an extended discussion because it is undisputed that neither plaintiff nor her decedent reviewed or relied upon any advertising or

representations about the relative capabilities of ionization smoke detectors. Unlike the duty-to-warn theory,[2] this false advertising or misrepresentation theory requires the plaintiff to offer substantial evidence of (1) a false statement or representation made in advertising or otherwise, and (2) that the false statement was relied upon by the plaintiff or the decedent in relation to accepting the ionization smoke detector as adequate protection. There simply is no evidence of reliance. Indeed, plaintiff Pat Holland clearly testified that the KSA-700 smoke detector at issue was received as a gift and that she was not shopping for or in the market for a smoke detector. She simply did not rely on any representations about the capabilities of the KSA-700. Further, because Erica Early died, there is no evidence that she relied upon any advertising with respect to the KSA-700. Furthermore, she was not a "consumer" with respect to the KSA-700, as the positive evidence here is that plaintiff Pat Holland received the smoke detector as a gift. It was not purchased by either plaintiff or the decedent, so there is no evidence they relied upon advertising in making a purchase.

The motion for partial summary judgment is due to be granted as to plaintiff's false advertising/misrepresentation claim.

## Conclusion

Based on the foregoing undisputed facts and law, the defendants' motion for partial summary judgment is due to be granted in part and denied in part. By separate order, the court will grant the motion with respect to plaintiff's claims for concealment, negligent failure to recall, and false

---

[2] The essence of a duty-to-warn claim is *no* adequate statement was made about the risks or limitations inherent in the allegedly dangerous product. By contrast, a false advertising/misrepresentation claim necessarily asserts that a positive statement was made about the product, which was relied upon by consumers in selecting the product.

advertising/misrepresentation, and such claims will be dismissed with prejudice. The motion will be denied with respect to plaintiff's failure-to-warn claim.

DATED this 9th day of October, 2007.

                                                   T. MICHAEL PUTNAM
                                                 U.S. MAGISTRATE JUDGE